## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| Joseph Foresta, | CIVIL ACTION |
| Plaintiff, | NO. 2:23-CV-01379 |
| v. | |
| Airbnb, Inc., | |
| Defendant. | |

## DEFENDANT AIRBNB, INC.'S MOTION
## TO COMPEL ARBITRATION AND TO STAY PROCEEDINGS, AND
## TO DISMISS FOR LACK OF PERSONAL JURISDICTION

Defendant Airbnb, Inc. ("Airbnb"), by and through undersigned counsel, hereby submits its Motion to Compel Arbitration and to Stay Proceedings, and to Dismiss for Lack of Personal Jurisdiction (the "Motion").  For the reasons set forth below, the Court should compel Plaintiff Joseph Foresta ("Plaintiff") to binding arbitration and stay all proceedings in the interim or dismiss Plaintiff's Complaint for lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2).

## I.   **INTRODUCTION**

Plaintiff's claims—based on damages allegedly incurred while serving as the host of an accommodation (the "Premises") he listed on Airbnb's online marketplace (the "Platform")—cannot proceed in this forum for two reasons.  First, Plaintiff must pursue all claims against Airbnb in binding arbitration.  It is undisputed that Plaintiff consented to Airbnb's Terms of Service ("TOS") and Host Guarantee Terms ("HG Terms"), both of which include mandatory arbitration agreements.  Those arbitration agreements cover all claims arising out of or relating to the use of the Platform or any Airbnb service, including Plaintiff's listing of his property as a host, and

delegates all questions concerning arbitrability to the arbitrator. Thus, the Court should compel Plaintiff to binding arbitration and stay all proceedings in the interim.

Second, even if Plaintiff is not subject to mandatory arbitration (which he is), the Court should dismiss Plaintiff's claims against Airbnb for lack of personal jurisdiction. As an out-of-state defendant that simply operates an internet platform accessible to anyone in the world with internet access, Plaintiff cannot establish that Airbnb is subject to either general or specific personal jurisdiction in Pennsylvania. Airbnb does not have continuous and systematic contacts with Pennsylvania for purposes of general personal jurisdiction. Nor can Plaintiff demonstrate the required connections for specific personal jurisdiction. Airbnb does not have the requisite minimum contacts with Pennsylvania, nor do Plaintiff's claims arise out of or relate to any such contacts with Pennsylvania. Thus, the Court should dismiss Plaintiff's Complaint as to Airbnb for lack of personal jurisdiction in the alternative to compelling Plaintiff to arbitration.

II.    <u>BACKGROUND</u>

A.    **Airbnb and the Airbnb Platform.**

Airbnb is a corporation formed under the laws of Delaware with its principal place of business in San Francisco, California. Declaration of Darien Shepherd in Support of Defendant Airbnb, Inc.'s Motion to Compel Arbitration and Motion to Dismiss for Lack of Personal Jurisdiction ("Shepherd Decl.") ¶ 2.[1] Airbnb does not maintain offices in Pennsylvania. *Id.* Airbnb provides an online marketplace—the Platform—accessible through an internet connection

---

[1] The Court may consider affidavits and other evidence when deciding a motion to dismiss for lack of personal jurisdiction. *See Martin v. White*, No. 1:22-cv-01482, 2023 U.S. Dist. LEXIS 33394, at *13 (M.D. Pa. Feb. 28, 2023) (explaining that the court may consider affidavits and additional evidence when determining questions of personal jurisdiction).

anywhere in the world.  *Id.*  The Platform connects individuals who wish to offer accommodations, known as "hosts," with those seeking to book accommodations, known as "guests."  *Id.*  Hosts and guests are collectively referred to as "Members."  *Id.*  A guest who wants to book an accommodation can sign up and use Airbnb's marketplace to communicate directly with a property's host to request a booking.  *Id.*

Airbnb's role is limited to providing the Platform.  *See id.*  In other words, Airbnb "facilitates the marketplace for property rentals and payment for bookings but is otherwise not involved in the interaction between a host and guest."  *Selden v. Airbnb, Inc*., 4 F.4th 148, 152 (D.C. Cir. 2021); Shepherd Decl. ¶¶ 4-5.  In particular, Airbnb does not operate the accommodations listed on the Platform, and Airbnb's Platform does not set prices or determine availability, as those decisions are made instead by the host, who decides whether to list the accommodations and on what terms.  *Selden*, 4 F.4th at 152; Shepherd Decl. ¶ 3.  In other words, Airbnb does not own or control the properties that hosts list on the Platform, but instead allows hosts and guests to connect with each other to transact, make payments, and communicate.  *See Airbnb, Inc. v. City & County of San Francisco*, 217 F. Supp. 3d 1066, 1069 (N.D. Cal. 2016) (noting that "Airbnb does not own, manage or operate any of the host properties, and is not a party to the rental agreements"); *Carroll v. Am. Empire Surplus Lines Ins. Co*., 289 F. Supp. 3d 767, 772 (E.D. La. 2017) (same); *see also* Shepherd Decl. ¶ 6.

**B.      Both the TOS and the HG Terms Require Plaintiff to Arbitrate All Disputes With Airbnb Arising Out Of or Relating To the TOS or the HG Terms.**

Plaintiff is seeking to recover for damages a guest allegedly caused at the Premises and for that guest overstaying a reservation at the Premises.  *See* Compl. ¶¶ 12-16.

Airbnb's business records indicate that Plaintiff created his Airbnb account on July 3, 2019, and affirmatively indicated his consent to Airbnb's Terms of Service ("TOS") upon completing the sign-up process.  *See* Shepherd Decl. ¶¶ 11-17, **Exs. A-E**.  The first page of the TOS states in **bold** typeface that "**Section 19 of these Terms contains an arbitration clause and class action waiver that applies to all Airbnb Members. If your country of residence is the United States, this provision applies to all disputes with Airbnb. . . . Please read it carefully.**" Shepherd Decl. ¶ 19, **Ex. F** at 1.  Section 19 continues:

> **19.4 Agreement to Arbitrate. You and Airbnb mutually agree that any dispute, claim or controversy arising out of or relating to these Terms or the applicability, breach, termination, validity, enforcement or interpretation thereof, or to the use of the Airbnb Platform, the Host Services, the Group Payment Service, or the Collective Content (collectively, "Disputes") will be settled by binding individual arbitration (the "Arbitration Agreement"). If there is a dispute about whether this Arbitration Agreement can be enforced or applies to our Dispute, you and Airbnb agree that the arbitrator will decide that issue.**

*Id.* ¶ 20, **Ex. F** § 19.4.  The arbitration agreement is clear that it applies broadly to any claim arising out of or relating to the use of Airbnb's online platform, content, and service.  *Id.* ¶¶ 19-20, 23.

Additionally, Plaintiff affirmatively indicated his consent to the HG Terms, which were incorporated by reference and formed a part of the TOS, upon completing the sign-up process. *See* Shepherd Decl. ¶¶ 11-18, **Exs. A-F**.  The HG Terms are binding as soon as an accommodation, such as the Property, is posted on the Platform.  *See id.* ¶ 18, **Ex. G** at 1.  Plaintiff began listing

the Premises for booking through the Platform on or about November 24, 2019. *See id.* ¶ 18, **Ex. H.**

The first page of the HG Terms states, in **bold** typeface, that: "**These [HG] Terms contain an arbitration clause and class action waiver that applies to all Airbnb Members. If you reside in the United States, this provision applies to all disputes with Airbnb. … By accepting these [HG] Terms, you agree to be bound by this arbitration clause and class action waiver. Please read it carefully.**" *See id.* ¶ 21, **Ex. G** at 1.  Section X continues:

> 4. Agreement to Arbitrate. **You and Airbnb mutually agree that any dispute, claim or controversy arising out of or relating to these [HG] Terms or the breach, termination, enforcement or interpretation thereof, or to the use of the Airbnb Platform, the Host Services, or the Collective Content (collectively, "Disputes") will be settled by binding arbitration (the "Arbitration Agreement"). If there is a dispute about whether this Arbitration Agreement can be enforced or applies to our Dispute, you and Airbnb agree that the arbitrator will decide that issue.**

*Id.* ¶ 22, **Ex. G** § X.4.

The arbitration agreement in the HG Terms is clear that it applies broadly to any claim arising out of or relating to the HG Terms, including Plaintiff's claims here seeking recovery under the HG Terms, as well as any use of the Platform or Airbnb services. *Id.* ¶¶ 21-23.

The arbitration agreement contained in both the TOS and HG Terms each clearly state that "**[i]f there is a dispute about whether this Arbitration Agreement can be enforced or applies to our Dispute … the arbitrator will decide that issue.**" *Id.* ¶ 24, **Ex. F** § 19.4, **Ex. G** § X.4. Thus, Plaintiff's claims are subject to a binding arbitration agreement, both under the HG Terms and the TOS.

III.    **ARGUMENT**

    **A.    The Court Should Compel Plaintiff to Arbitration and Stay These Proceedings in the Interim.**

The Federal Arbitration Act ("FAA"), which governs the TOS and the HG Terms,[2] codifies a strong federal policy favoring arbitration, making the arbitration agreements contained therein "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2.  Indeed, "courts must rigorously enforce arbitration agreements according to their terms, including terms that specify with whom the parties choose to arbitrate their disputes and the rules under which that arbitration will be conducted." *Am. Express Co. v. Italian Colors Rest.*, 570 U.S. 228, 233 (2013); *Gaffer Ins. Co. v. Discover Reinsurance Co.*, 936 A.2d 1109, 1113 (stating that Pennsylvania's "well-established public policy favor[ing] arbitration" is consistent with federal policy).  "'[W]here the contract contains an arbitration clause, there is a presumption of arbitrability in the sense that an order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage.'"  *United Steelworkers of Am., AFL-CIO-CLC v. Lukens Steel Co., Div. of Lukens, Inc.*, 969 F.2d 1468, 1474 (3d Cir. 1992) (quoting *AT&T Technologies, Inc. v Communications Workers of America*, 475 U.S. 643, 650 (1986).

---

[2] Section X.6 of the HG Terms and 19.6 of the TOS provide that the "Federal Arbitration Act governs the interpretation and enforcement" of the respective agreements' arbitration provisions. Shepherd Decl., **Ex. F** § 19.6, **Ex. G** § X.6; *see also Bill Gray Nissan, Inc. v. Am. Suzuki Motor Corp.*, Civil Action No. 02-450, 2002 U.S. Dist. LEXIS 17297, at *6 (W.D. Pa. July 26, 2002) ("The FAA preempts state laws that 'require a judicial forum for the resolution of claims which the contracting parties agreed to resolve by arbitration.'"); *Preston v. Ferrer*, 552 U.S. 346, 359 (2008).

When faced with a motion to compel arbitration, the court's role is limited to whether an agreement to arbitrate exists and, if so, whether the agreement encompasses the dispute at issue. *Lenox Corp. v. Blackshear*, 226 F. Supp. 3d 421, 428 (E.D. Pa. 2016).   In analyzing these questions, the Court must apply California contract law because the TOS contains a choice-of-law provision under section 21.1, and the HG Terms incorporates that provision by reference. **Ex. F** § 21.1, **Ex. G** at 12.  *See Wolsey, Ltd. v. Foodmaker, Inc.*, 144 F.3d 1205, 1210 (9th Cir. 1998) ("In construing an arbitration agreement, courts must apply ordinary state-law principles that govern the formation of contracts."); *Century Indem. Co. v. Certain Underwriters at Lloyd's*, 584 F.3d 513, 524 (3d Cir. 2009) (same).  But where, like here, the arbitration agreement clearly and unmistakably delegates threshold issues of arbitrability to the arbitrator, the Court should stay the case and refer the matter to arbitration without further consideration.  *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 530 (2019) (explaining that the court must refer the matter to arbitration and may not consider the merits, even if the claim appears frivolous); *see also, Lukens Steel*, 969 F.2d at 1474 (explaining that a court determining a motion to compel arbitration is not to consider the merits of the claims).

### 1.   Plaintiff is Bound to a Valid, Enforceable Arbitration Agreement.

First, Plaintiff is bound to the TOS and HG Terms because he affirmatively consented to them upon completing the sign-up procedure.  *See* Shepherd Decl. ¶¶ 16-18, **Ex. F, Ex. G.**  Under California law, assent to an online contract—like the HG Terms and the TOS—exists when the user affirmatively clicks an "accept"-type button, like Plaintiff did here.  *See, e.g.*, *Oberstein v. Live Nation Entm't, Inc.*, --- F.4th ----, 2023 U.S. App. LEXIS 3378, at **20-25 (9th Cir. Feb. 13, 2023) (finding manifestation of assent to arbitration agreement in Live Nation's Terms of Use

where users were notified that "by creating an account, signing in, or purchasing a ticket, and proceeding to the next page, the user 'agrees to our Terms of Use.'"); *Holl v. United States Dist. Court (In re Holl)*, 925 F.3d 1076, 1084-85 (9th Cir. 2019) (finding assent to arbitration agreement incorporated by reference in UPS user agreement because the plaintiff "affirmatively assented to the UPS My Choice Service Terms.  He checked a box acknowledging as much."); *Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 75-80 (2d Cir. 2017) (applying California law and finding that the plaintiff affirmatively assented to Uber's mandatory arbitration agreement in its Terms of Service by creating his account and using the mobile app).  Indeed, an arbitration agreement need not be signed for it to be valid and enforceable.  *Hoffman v. Compassus*, No. 18-0776, 2019 U.S. Dist. LEXIS 69017, at *19 (E.D. Pa. Apr. 23, 2019) (compelling arbitration where plaintiff did not sign agreement) (collecting cases).  Thus, Plaintiff is bound by his consent to the TOS and the HG Terms.

>     **2.** **The TOS and HG Terms Clearly and Unmistakably Delegate Issues of Arbitrability to the Arbitrator.**

Because Plaintiff is bound to a valid, enforceable arbitration agreement, the Court should refer this case to arbitration without further consideration pursuant to the clear and unmistakable delegation provision that delegates all issues of arbitrability to the arbitrator.  Parties can agree to arbitrate "gateway questions of arbitrability, such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy . . . so long as the parties' agreement does so by clear and unmistakable evidence."  *Henry Schein, Inc.*, 139 S. Ct. at 529-30 (citations and internal quotation marks omitted).  This delegation to the arbitrator includes jurisdiction over both the *scope* of the arbitration agreement *and* whether the agreement itself is enforceable against the plaintiff.  *See Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 72 (2010) (holding that the

question of whether the arbitration agreement was unconscionable must be decided by the arbitrator under provision delegating enforceability issues); *Aanderud v. Superior Court*, 13 Cal. App. 5th 880, 897 (2017) (enforcing provision delegating all disputes concerning the "interpretation, validity, or enforceability," including "the scope or applicability" of the arbitration agreement, to the arbitrator).

Here, the TOS and HG Terms plainly provide that "**[i]f there is a dispute about whether this Arbitration Agreement can be enforced or applies to our Dispute, you and Airbnb agree that the arbitrator will decide that issue**." Shepherd Decl. ¶¶ 20, 22, 24, **Ex. F** § 19.4, **Ex. G** § X.4. Both agreements also incorporate the AAA Consumer Arbitration Rules, which further gives the arbitrator "the power to rule on . . . any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim." **Ex. F** § 19.6, **Ex. G** § X.6; AAA Commercial Arbitration Rule 14, available at www.adr.org.

Courts deem delegation language like this—which requires an arbitrator to decide whether an arbitration agreement applies to the parties' dispute—sufficient to find that the question of arbitrability must be arbitrated. *See Momot v. Mastro*, 652 F.3d 982, 988 (9th Cir. 2011) (enforcing clause delegating to arbitrator issues of "the validity or application of" the arbitration provision); *Zirpoli v. Midland Funding, LLC*, 48 F.4th 136, 138 (3d Cir. 2022) (enforcing clause delegating questions of "enforceability, or arbitrability of any Claim" to the arbitrator). And "[v]irtually every circuit to have considered the issue has determined that incorporation of the American Arbitration Association's (AAA) arbitration rules constitutes clear and unmistakable evidence that the parties agreed to arbitrate arbitrability." *Oracle Am., Inc. v. Myriad Grp. A.G.*, 724 F.3d 1069, 1074 (9th Cir. 2013) (collecting cases); *Dobbs v. Health IQ Ins. Servs.*, No. 21-

5276, 2022 U.S. Dist. LEXIS 133182, at *13 (E.D. Pa. July 27, 2022); *Richardson v. Coverall N. Am., Inc.*, 811 F. App'x 100, 103 (3d Cir. 2020).

Courts around the country have enforced Airbnb's delegation provision, explaining that it "is neither silent nor ambiguous, and specifically designates the arbitrator to decide disputes about whether the arbitration agreement is enforceable or applicable." *Dunbar v. Airbnb, Inc.*, 2020 U.S. Dist. LEXIS 56828, at *8 (D. Haw. Apr. 1, 2020) (enforcing Airbnb's delegation clause); *see also Airbnb, Inc. v. Doe*, 336 So. 3d 698, 705-06 (Fla. 2022) ("We hold that, because Airbnb's Terms of Service incorporate by reference the AAA Rules that expressly delegate arbitrability determinations to an arbitrator, the agreement clearly and unmistakably evidences the parties' intent to empower an arbitrator, rather than a court, to resolve questions of arbitrability."); *Farmer v. Airbnb, Inc.*, No. 20-cv-07842-JST, 2021 U.S. Dist. LEXIS 206791, at *3 (N.D. Cal. June 1, 2021) (finding the plaintiff's challenge to arbitration was for arbitrator under TOS' delegation provision); *Walter v. Airbnb, Inc.*, 2021 U.S. Dist. LEXIS 25924, at *1 (M.D. Fla. Feb. 11, 2021) (enforcing the TOS' delegation provision); *Morris v. Airbnb, Inc.*, 2020 U.S. Dist. LEXIS 180532, at *7 n.2 (W.D. Okla. Sept. 30, 2020) (same); *McCluskey v. Airbnb, Inc.*, 2018 Cal. Super. LEXIS 2453, at *1 (San Francisco Sup. Ct. May 30, 2018) (granting Airbnb's motion to compel arbitration and enforcing delegation provision); *Senders v. Airbnb, Inc.*, 2018 Cal. Super. LEXIS 763, at *1 (San Francisco Sup. Ct. March 14, 2018) (same). This Court should do the same and refer this case to arbitration.

### 3.    Plaintiff's Claims Are Also Within the Arbitration Agreement's Scope.

Plaintiff's claims also fall within the arbitration agreement's scope. The arbitration agreement in the HG Terms provides "any dispute, claim or controversy arising out of or relating

to these [HG] Terms or the breach, termination, enforcement or interpretation thereof, or to the use of the Airbnb Platform, the Host Services, or the Collective Content … will be settled by binding arbitration." Shepherd Decl. ¶ 22, **Ex. G** § X.4.  Courts in this jurisdiction have held that "an arbitration clause that uses 'language such as 'any dispute that arises out of or relates to' the agreement, or disputes that are 'in connection with' the agreement' is characterized as broad," and "govern disputes beyond those that involve the terms of the contract in which the arbitration clause appears." *Hearon v. AstraZeneca LP*, No. 02-3189, 2003 U.S. Dist. LEXIS 6628, at *14 (E.D. Pa. Mar. 24, 2003) (collecting cases).  Here, there is no doubt that Plaintiff's claims fall within this scope, as he seeks to recover damages that allegedly occurred during and after a reservation booked through the Platform.  *See* Shepherd Decl. ¶¶ 20-21.  Furthermore, even if Plaintiff does not seek to recover damages under the HG Terms, his claims still necessarily fall within the scope of the arbitration agreement contained in the TOS, which applies to all aspects of the relationship between Plaintiff and Airbnb, and states that "any dispute, claim or controversy arising out of or relating to these Terms or the applicability, breach, termination, validity, enforcement or interpretation thereof, or to the use of the Airbnb Platform, the Host Services, the Group Payment Service, or the Collective Content … will be settled by binding individual arbitration." *Id.* ¶ 20, **Ex. F** § 19.4.  Taken together, there can be no doubt that Plaintiff's claims fall within the scope of the two arbitration agreements to which he consented.  And even if there was doubt, it must be resolved in favor of arbitration.  *See Lukens Steel*, 969 F.2d at 1474 (explaining that all doubts should be resolved in favor of arbitration).  Because Plaintiff is bound to an arbitration agreement

and his claims fall within the agreement's scope, the Court should compel arbitration.

### 4.      The Litigation Must Be Stayed Pending Arbitration.

Section 3 of the FAA requires courts to stay litigation upon referring a dispute to arbitration.  9 U.S.C. § 3.  A stay is required here because Plaintiff must arbitrate all claims against Airbnb, as well as any gateway issues of enforceability, scope, and validity.  *See Countrywide Home Loans, Inc. v. Mortg. Guar. Ins. Corp.*, 642 F3d 849, 854 (9th Cir. 2011) (explaining that a stay is mandatory once the court determines the parties' dispute is subject to arbitration); *DCK N. Am., LLC v. Burns & Roe Servs. Corp.*, 218 F. Supp. 3d 465, 471 (W.D. Pa. 2016) (same)**.**  Thus, this Court should compel Plaintiff to arbitration and must stay these proceedings in the interim.

### B.      In the Alternative, the Court Should Dismiss Plaintiff's Complaint Against Airbnb for Lack of Personal Jurisdiction.

Even if the Court determines that Plaintiff is not subject to mandatory arbitration (which he is), it should dismiss Plaintiff's Complaint because Plaintiff has not and cannot satisfy his burden of establishing that personal jurisdiction over Airbnb exists in Pennsylvania.  *See Danziger & De Llano, LLP v. Morgan Verkamp LLC*, 948 F.3d 124, 129 (3d Cir. 2020) (explaining it is the plaintiff's burden to establish personal jurisdiction).   Pennsylvania law extends personal jurisdiction to the fullest extent permitted under the Fourteenth Amendment, meaning Plaintiff must demonstrate that Airbnb is subject to either general personal jurisdiction or specific personal jurisdiction.  *See Fischer v. Fed. Express Corp.*, 42 F.4th 366, 383 (3d Cir. 2022) (holding plaintiffs failed to establish either general or specific personal jurisdiction in Pennsylvania over foreign corporation).  Courts may assert general jurisdiction over a corporation when its contacts with the forum are so continuous and systematic as to render it essentially "at home" in the forum.

*See id.* (concluding that a Delaware corporation with its principal place of business in Tennessee was not sufficiently "at home" in the forum to establish general personal jurisdiction).  For specific personal jurisdiction, the inquiry focuses on whether Airbnb has the requisite minimum contacts with Pennsylvania.  *See Danziger & De Llano*, 948 F.3d at 129-30 (concluding defendant's contacts with Pennsylvania were insufficient to establish the requisite minimum contacts).

As demonstrated below, the Court does not have general or specific personal jurisdiction over Airbnb.  Plaintiff's incorrect assertion that Airbnb is registered to do business in Pennsylvania and conclusory suggestion that Airbnb conducts business in the forum fall well short of satisfying his burden here.  Thus, the Court should dismiss Airbnb for lack of personal jurisdiction.

### 1.    General Personal Jurisdiction Does Not Exist in Pennsylvania.

As an out-of-state corporation, Airbnb is not subject to general personal jurisdiction in Pennsylvania.  Foreign corporations like Airbnb are essentially "at home" in their state of incorporation and state of their principal place of business.  *See Fischer*, 42 F.4th at 383; *Eyajan v. Nesco Res., LLC*, No. 1:20-cv-204, 2022 U.S. Dist. LEXIS 178324, at *9 (W.D. Pa. Sep. 30, 2022) (finding no general jurisdiction over foreign corporations that were not incorporated in Pennsylvania and did not maintain their principal place of business in the forum); *see also Daimler AG v. Bauman*, 571 U.S. 117, 139 (2014).  As a Delaware corporation with its principal place of business in California, Airbnb has no continuous and systematic contacts with Pennsylvania. Shepherd Decl. ¶ 2.  Accordingly, Airbnb is not subject to general personal jurisdiction in Pennsylvania.

### 2.    Specific Personal Jurisdiction Does Not Exist in Pennsylvania.

Airbnb also is not subject to specific personal jurisdiction in Pennsylvania.  To establish specific personal jurisdiction, two elements must be satisfied: (1) Airbnb must have purposefully directed its activities at Pennsylvania *and* (2) Plaintiff's claims must arise out of and relate to those activities.  *See Danziger & De Llano*, 948 F.3d at 129; *Travers v. FedEx Corp.*, 584 F. Supp. 3d 1, 5 (E.D. Pa. 2022) (concluding that foreign corporations did not have sufficient minimum contacts with Pennsylvania because Plaintiff did not "demonstrate 'a strong relationship among the defendant, the forum, and the litigation.'") (internal quotation omitted)).[3]  As demonstrated below, Airbnb has not purposefully directed any contact at Pennsylvania.  Moreover, Plaintiff's claims, stemming from alleged damages caused by a guest at a property Airbnb did not own or control, certainly do not arise out of or relate to any of Airbnb's contacts with Pennsylvania.  Thus, Airbnb is not subject to specific personal jurisdiction in Pennsylvania.

### a.    Airbnb Did Not Purposefully Direct Any Conduct at Pennsylvania.

To establish that Airbnb purposefully directed its conduct at Pennsylvania, Plaintiff must prove that Airbnb deliberately targeted Pennsylvania—Plaintiff's unilateral contact with Airbnb is not enough.  *See Travelers Cas. v. Copeland Corp. LLC*, Civil Action No. 22-cv-725, 2022 U.S. Dist. LEXIS 215337, at *38 (W.D. Pa. Nov. 30, 2022) (finding no purposeful direction to Pennsylvania where defendant's contact was far too attenuated); *see also Scott v. Lackey*, 587 F. App'x 712, 716 (3d Cir. 2014) (citing *Walden v. Fiore*, 571 U.S. 277, 284 (2014).  Random,

---

[3] Even if these two elements existed, which they do not, the Court must also consider whether exercising personal jurisdiction over Airbnb offends traditional notions of fair play and substantial justice.  *See Kennedy v. Help at Home, LLC*, 731 F. App'x 105, 107 (3d Cir. 2018).  Because Airbnb did not purposefully direct any conduct at Pennsylvania and Plaintiff's claims do not arise out of any contact with Pennsylvania, subjecting Airbnb to personal jurisdiction in Pennsylvania would offend traditional notions of fair play and substantial justice.  *See id.*

isolated, and fortuitous contacts with the forum likewise fail to establish purposeful direction. *Marten v. Godwin*, 499 F.3d 290, 297 (3d Cir. 2007) (finding no purposeful direction for where defendant did nothing more than direct some communications to Pennsylvania).  Airbnb has not purposefully directed any contact to Pennsylvania because (i) Airbnb operates a global online marketplace and (ii) contrary to Plaintiff's baseless assertions, Airbnb does not make determinations as to who makes reservations or stays at the Premises.

First, Airbnb simply provides a global online marketplace—the Platform—that is accessible to anyone, anywhere with internet access.  Shepherd Decl. ¶ 2, **Ex. F** § 1.1.  The Platform is not specifically targeted to Pennsylvania residents.  A commercial website, like the Platform, that is generally accessible anywhere is insufficient to establish purposeful direction with the forum.  *See Ackourey v. Sonellas Custom Tailors*, 573 F. App'x 208, 212 (3d Cir. 2014) (finding no purposeful direction based on publicly available website which allowed potential customers to initiate contacts for services).  In *PrimePay, LLC v. Prime Tr., LLC*, this Court held that personal jurisdiction did not exist in Pennsylvania where the defendant's only contact with the forum was its passive website, which displayed an allegedly infringing mark.  559 F. Supp. 3d 394, 400 (E.D. Pa. 2021).  The court found dispositive that transactions did not occur until potential customers initiated contact with defendant and agreed to a contract governing their relationship and contacts with defendant.  *Id.*

Such is the case here: the Platform offers a direct link for Members to communicate and contract directly with each other—nothing more.  *See* Shepherd Decl. ¶ 2, **Ex. F** § 1.1.  Courts in other jurisdictions have also refused to exercise personal jurisdiction over a non-resident defendant who runs a reservation website.  In *Conrad v. Benson*, No. 9:20-cv-1811-RMG, 2020

U.S. Dist. LEXIS 149427, at *10-12 (D.S.C. Aug. 13, 2020), the Court found that it lacked personal jurisdiction over HomeAway.com, Inc., a Texas-based reservation website, that, like Airbnb, allows third party hosts to list their properties for rental by third party guests.  The *Conrad* Court explained that it was not enough that the website was accessible to people in the forum or that the host and guest had used the website to rent and book a property in the forum because HomeAway.com had not done anything to target the forum and did not itself lease properties in the forum.  *Id.*  A California court reached the same conclusion in *Schwartz v. Poblete*, No. 20STCV22663, 2021 Cal. Super. LEXIS 5573, at **24-25 (LA County Superior Court, Feb. 22, 2021).  Like in *Conrad*, the *Schwartz* Court held that HomeAway.com's "mere maintenance of the website advertising the third-party property rentals is insufficient to establish personal jurisdiction" in California.  *Schwartz*, 2021 Cal. Super. LEXIS 5573, at *25.  That Plaintiff listed his Pennsylvania property on the globally accessible Platform does not and cannot satisfy the requirement that Airbnb purposefully directed its conduct at Pennsylvania residents.  Thus, operation of the Platform, without more, does not constitute purposeful direction towards Pennsylvania.

Second, the TOS contradicts and defeats Plaintiff's naked assertions that Airbnb places guests in properties or decides for a host who will be a guest.  *See* Pls.' Compl. at ¶¶ 25-28.  The TOS is clear: "As the provider of the Airbnb Platform, Airbnb does not own, create, sell, resell, provide, control, manage, offer, deliver, or supply any Listings or Host Services"; does not even have any right to access the Premises; and is not acting as an agent for any Member, or as a real estate broker, or as an insurer.  Shepherd Decl. ¶¶ 3, 6, **Ex. F** §§ 1.2-1.3.  The TOS is equally clear that hosts, like Plaintiff, operate as independent individuals and *not* as "an employee, agent, joint

venturer or partner of Airbnb for any reason." *Id.* ¶ 3, **Ex. F** § 1.4. Thus, Airbnb did not and could not purposefully direct any contact towards Pennsylvania based on the location of Plaintiff's property.

      <u>Third</u>, and finally, Plaintiff's vague suggestion that Airbnb and Plaintiff entered an agreement to rent the Plaintiff's property does not establish any purposeful direction by Airbnb at Pennsylvania. It is well-established that an individual's contract with a nonresident cannot *alone* establish sufficient minimum contacts in the other party's home forum. *Burger King,* 471 U.S. at 478; *Marten*, 499 F.3d at 297. Moreover, the only agreement that exists between Airbnb and Plaintiff—the TOS—applies to *all* members and governs members' "access to and use of" the Platform. Shepherd Decl. ¶ 6, **Ex. F** § 17. Any agreement to book the property for a short-term rental is between Plaintiff and the guest who books the property, not Airbnb. *See id.* ¶ 4, **Ex. F** §§ 1.2, 7.1.7, 8.1.2. Thus, Plaintiff's unsupported allegations about an agreement do not support any purposeful conduct by Airbnb toward Pennsylvania.

      Based on the foregoing, it is clear that Airbnb did not purposefully direct its conduct toward Pennsylvania. Thus, on this basis alone, the Court should dismiss Plaintiff's Complaint for lack of personal jurisdiction and grant Airbnb's Motion. *See Travers*, 584 F. Supp. 3d at 5 (finding no specific personal jurisdiction where plaintiff failed to demonstrate foreign defendant purposefully directed contact at Pennsylvania).

      **b.**    **Plaintiff's Claims Do Not Arise Out of or Relate to the Airbnb's Contacts with Pennsylvania.**

      Even if Plaintiff could establish that Airbnb purposefully directed its conduct at Pennsylvania (which he cannot), Plaintiff's claims do not arise out of or relate to Airbnb's contacts with Pennsylvania. As the provider of a globally accessible internet platform that does not own,

operate, or control Plaintiff's property, any contacts Airbnb had with Pennsylvania have no connection whatsoever to the claims asserted here. *See Hepp v. Facebook*, 14 F.4th 204, 208 (3d Cir. 2021) (holding that the defendants' internet marketing contacts with the forum did not relate to plaintiff's misappropriation claim because plaintiff did not allege the defendants sold merchandise with her likeness or hosted the misappropriated picture in the forum). That Plaintiff's alleged injuries occurred in the forum, without more, is insufficient to establish that his claims arise out of or relate to *Airbnb's* contact with Pennsylvania. *See Walden v. Fiore*, 571 U.S. 277, 285 (2014) (holding that "the plaintiff cannot be the only link between the defendant and the forum"). Thus, the Court should dismiss Plaintiff's claims for lack of specific personal jurisdiction.

## IV.   **CONCLUSION**

Based on the foregoing, Plaintiff's claims against Airbnb cannot proceed in this forum. Plaintiff is bound to the mandatory arbitration agreement in the HG Terms and the TOS and its claims undoubtedly arise out of and relate to the HG Terms and the TOS. And, because Airbnb does not have sufficient minimum contacts with this forum, this Court cannot exercise personal jurisdiction over it. Accordingly, Airbnb respectfully request that the Court grant the Motion and compel Plaintiff to arbitration and stay these proceedings in the interim, or in the alternative, dismiss Plaintiff's Complaint for lack of personal jurisdiction, and grant all other relief deemed fair and equitable.

Respectfully submitted this 4th day of May, 2023.

*KELLY J. FOX*

Kelly J. Fox
GEROLAMO McNULTY DIVIS, LEWBART & FOX
121 S. Broad Street, Suite 1400
Philadelphia, Pennsylvania 19107
Telephone: (215) 790-8400
Email: kfox@gmdlfirm.com

-

*Attorneys for Respondent Airbnb, Inc.*