## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANA

| | | |
|---|---|---|
| Joseph Foresta | : | |
| Plaintiff | : | CIVIL ACTION |
| | : | |
| v. | : | 2:23-cv-01379-JFM |
| | : | |
| Airbnb | : | |
| | : | |
| Defendant | : | |

---

### PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO COMPEL ARBITRATION, STAY PROCEEDINGS AND DISMISS FOR LACK OF PERSONAL JURISDICTION

Plaintiff, Joseph Foresta, by his attorney Joyce Ullman responds to Defendant's Rule 12 (b)(2) Motion to Compel Plaintiff to Binding Arbitration, Stay all Proceedings in the interim, or Dismiss Plaintiff's Complaint for Lack of Personal Jurisdiction.

I    INTRODUCTION

Plaintiff denies Defendant's claims that Plaintiff cannot proceed in this forum because 1) plaintiff must pursue all claims against Airbnb in binding arbitration; and 2) if Plaintiff is not subject to binding arbitration, Plaintiff's claim should be dismissed against Airbnb for Lack of Personal Jurisdiction.

Plaintiff seeks this Court Deny/Dismiss Defendant's Rule 12 (b) (2) Motion, and grant Plaintiff leave to amend his Civil Action Complaint, if needed to include additional allegations of Defendant's contacts in this jurisdiction and Defendant's failure to abide by its own claim resolution process.

II    BACKGROUND

Plaintiff filed a Civil Action Complaint against Defendant, Airbnb in the Court of Common Pleas of Philadelphia County on March 30, 2023, seeking a Judgement against Defendant for damages caused by a "guest" or for which the guest was responsible, which guest was placed in Plaintiff's property by Airbnb for one (1) night, June 13, 2020, and who did not vacate the property until removed by the Sheriff on September 10, 2020. (Exhibit "A", copy of Complaint)

In his Complaint, Plaintiff alleged that he was the owner of a triplex at 1514 Christian Street, Philadelphia, Pa (par. 2); That Defendant is an LLC incorporated in the State of Delaware with its principal corporate office located in San Francisco, California; (par. 3) That, at all times relevant herein, Defendant Airbnb was in the business of selling lodging to its customers, known as "guests" in private residences with their customers, the owners of the properties listed with Airbnb, known as "hosts" (par.4), for short term or long term lodging; that Plaintiff listed his apartments at 1514 Christian Street with Defendant Airbnb (par.6); that Airbnb placed a "guest" by the name of Lawrence H. Jackson in Plaintiff's second floor apartment for one (1) night, June 13, 2020 (par.10); that Defendant collected the amount of the rental in advance from the guest and remitted the amount collected, less a commission to the host, Mr. Foresta (par.5 and par.11); that on June 14th Mr. Jackson did not leave and took possession of the entire building at 1524 Christian Street by changing the locks, preventing Plaintiff from gaining access to the property (par.13a), renting out the other two (2) apartments and collecting the rent from "his" tenants (par.13a); that Lawrence H. Jackson and the occupants that Lawrence H. Jackson allowed to live in the property did extensive damage to the interior and exterior of the property (par.15); the Plaintiff was physically attacked by one of the occupants when he tried to access the property, sustaining serious bodily injuries (par.17); that Plaintiff initiated a legal action in ejectment

against Lawrence H. Jackson and the unknown occupants on August 10, 2020 in the Philadelphia Court of Common Pleas seeking Injunctive Relief to immediately remove them from the premises, docketed at case# 200800813, as a result of which the Court ordered a Writ of Possession be issued on September 9, 2020, and Lawrence H. Jackson and the other unknown occupant were removed from the property by the Sheriff (par.21); that the damage done to the property was in excess of $75,000.00 (par.22); that the damage was so extensive that it took Plaintiff until December 2021 to repair the damage (par.24); that during this time it was impossible to rent the apartments (par.23).

Plaintiff alleged in his Complaint against Airbnb that at the time he "listed his property with Defendant, Airbnb, Defendant Airbnb advised Plaintiff that, before it accepted a reservation from a prospective guest, they thoroughly vetted the prospective guest, led Plaintiff to believe Airbnb was responsible for the safety of the host's property from any damage caused by the guest to the host property and it would be responsible for any overstay of the guests beyond the time reserved and paid for by the guest". (par.8); and that "at all times relevant herein, by accepting guests from Defendant Airbnb, Plaintiff relied upon these assurances made by Defendant, Airbnb and believed that Defendant, Airbnb would protect him from a guest causing property damage and/or overstaying his/her prepaid reservation" (par.6); that "there was an implied contract between Plaintiff and Defendant Airbnb that whenever Defendant placed a guest in Plaintiff's property said placement posed a duty on Defendant Airbnb and created an expectation on the part of Plaintiff that it would take immediate action to remove any guest who overstayed his/her prepaid reservation" (par.26); that "there was also an implied contract between Plaintiff and Defendant Airbnb that whenever they placed a guest in Plaintiff's property

3

and that guest caused damage to the property or allowed damage to be caused to the property by others, Airbnb would be responsible to repair the damages" (par.28).

Plaintiff alleged that Airbnb violated its implied contract by failing to remove Lawrence H. Jackson from the property after June 14, 2020 or to make repairs to the property (par.29) as a result of which Plaintiff was entitled to damages against Airbnb, plus interest, attorney's fees and costs.

Plaintiff alleged that after Lawrence H. Jackson over stayed his reserved time, Plaintiff made many attempts to contact Airbnb but his calls were never returned (par. 17), and that Plaintiff's counsel wrote letters to Airbnb, none of which were acknowledged until late August 2022. Although Airbnb acknowledged the communication submitted, it did nothing to address the damage done to the property by Lawrence H. Jackson or to remove him from the property.(par.19)

In the state civil action Plaintiff had served Defendant with a Request for Production of Documents (Exhibit "B"). On April 13, 2023 Defendant produced only one of the many documents requested, that being "host protection rights". (Exhibit "C") The remainder of the Discovery Request is outstanding.

III     ARGUMENT

Defendant presents as its first Argument in its 12 (b)(2) Motion that the Court should compel Plaintiff to Arbitrate in accordance with a 43 page "Term Of Service" document (which Defendant refers to as "TOS") and a 23 page "Host Guarantee Terms And Conditions" document, (which Defendant refers to as the "HG") both of which are attached to Defendant's Motion.

Section 19 of the TOS is entitled "Dispute Resolution and Arbitration Agreement" and provides in section 19.1 – 19.14 all of the terms and conditions for submitting claims and disputes against Airbnb to a Binding Arbitration administered by the American Arbitration Association ("AAA") (19-2).  Section X of the HG, is entitled "Dispute Resolution and Arbitration Agreement" and provides further conditions for submitting claims and disputes to the American Arbitration Association.

Defendant presents as its second argument that "in the alternative the Court should Dismiss Plaintiff's Complaint against Airbnb for lack of personal jurisdiction alleging that "Plaintiff has not satisfied its burden of establishing that personal jurisdiction over Airbnb exists in Pennsylvania".

Defendant's argument that this Court does not have personal jurisdiction over the Defendant should be the first argument.  If, as the Defendant argues that this Court does not have personal jurisdiction over the Defendant then this Court cannot enter any order compelling Plaintiff to submit his claims against Airbnb to Binding Arbitration.

Therefore, Plaintiff will, in his response reverse Defendant's argument and set forth, first, his defense to Defendant's challenge to the personal jurisdiction of this Court over the Defendant, and then second respond to Defendant's request that Plaintiff must submit its claim to Binding Arbitration.

A.   <u>Defendant waived its challenge to personal jurisdiction</u>

Defendant has waived its challenge that Pennsylvania does not have personal jurisdiction over the Defendant when it transferred this case from the Philadelphia Court of Common Pleas to the US District Court before filing a responsive pleading to Plaintiff's Complaint, in which it could have, and should have raised lack of personal jurisdiction by the filing of a Preliminary

Objection pursuant to Pa Rule of Civil Procedure 1028(a)(1). "Preliminary Objections may be filed by any party to any pleading and are limited to the following grounds: (1) lack of personal jurisdiction over … the person of the Defendant…".

Initially, it is the Pennsylvania Court that should have decided the Defendant's challenge to personal jurisdiction.  By not filing a Preliminary Objection challenging jurisdiction over the Defendant, this claim is now waived

B.     Pennsylvania does have jurisdiction over Airbnb

If the Court should find that the Defendant has not waived its challenge to personal jurisdiction and that this issue is before this Court, the Court should find that Pennsylvania does have personal jurisdiction over the Defendant.

Plaintiff is a Pennsylvania resident.  Defendant is incorporated in the State of Delaware and has its office in the state of California.  It conducts its business over the internet and does business in every state in the United States in which its citizens have internet access. Pennsylvania citizens have internet access. Plaintiff, Joseph Foresta has internet access.  Joseph Foresta did business with Airbnb over the internet when he signed on with Airbnb to accept reservations from Airbnb for these "guests" in his property in Pennsylvania and received payment electronically into his bank account in Pennsylvania from Airbnb.[1]

The first case cited by the Defendant in support of its Motion to Dismiss for lack of

---

[1] To the extent that these facts are not alleged in Plaintiff's Complaint, Plaintiff is seeking leave of Court to add these factual allegations in an Amended Complaint, in which Plaintiff's will also allege that Plaintiff and Defendant have been doing business together for almost a year before June 13, 2020 using the same process where clients "guests" of Defendant Airbnb were placed by Airbnb in Plaintiff's property in Pennsylvania, Plaintiff received the reservation over the internet, the transaction was performed in Pennsylvania and the guest stayed in the Pennsylvania property and Plaintiff electronically received payment from Defendant in Plaintiff's bank account in Philadelphia, and the damage occurred in Pennsylvania.

jurisdiction is Danziger and DeLlano, LP v.  Morgan Verkamp, LLC and Morgan Verkamp, et al., which is both applicable and not applicable to the instant case.  What is not applicable to the instant case is that the Court in Danziger found that there was no personal jurisdiction over the Defendant and Granted the Motion to Dismiss. What is applicable are the cases cited in Danziger in which the Court found that there was personal jurisdiction over the Defendant and denied the Defendant's Motion to Dismiss. The facts of the Danziger case and the instant case are not similar and the instant case is more similar to the cases cited in Danziger in which the Court denied the Defendant's Motion to Dismiss for lack of personal jurisdiction.

Danziger's cause of action against Morgan Verkamp was based on both intentional torts and breach of contract and its lawsuit was brought in the United States District Court in Texas. Danziger was a law firm located in Texas and Morgan Verkamp was law firm in Ohio and the other Defendants were members of the Ohio law firm. Danziger referred two clients to Verkamp with an agreement to split the fees.  The following year Danziger referred a third client to Verkamp under the same fee arrangement.  However, as to the third client, a resident of Dubai, Morgan Verkamp instituted a lawsuit on the third client's behalf in Pennsylvania, and unbeknown to Danziger settled the case and Morgan Verkamp received over 5 million dollars in fees. Danziger was seeking $2,133.333 from its share of the fees raising intentional tort claims of fraud, unjust enrichment, tortous interference with prospective contractual relations, and breach of contract. The Texas Court granted the Defendant's Motion to Dismiss for Lack of Personal Jurisdiction on the basis that the contacts in Texas between the two parties was not sufficient to confer personal jurisdiction over the Defendant.  As to the breach of contract claim the Court held that the Defendant did not perform any activity in Texas, and was not required to perform any activity in Texas; the contract to split the fees was centered outside Texas, the

activities described in the Complaint did not constitute minimum contact by the Defendant and the Defendant did not perform any of the obligations in Texas, the contract was centered outside of Texas and no performance was required in Texas.

In its opinion in Danziger the Court cited cases upholding personal jurisdiction over the Defendant where the causes of action were based on intentional tort as well as in actions for breach of contract.  Since, in the instant case the Plaintiff is seeking damages for a violation of a breach of implied contract, Plaintiff will only cite those cases cited by the Court in Danziger which are applicable to upholding personal jurisdiction over Defendant for a breach of contract case.

Initially, the Court in Danziger cited *Bullion v. Gillespie*, 895 F2nd 213, 217 (5 circuit 1990) "on a Motion to Dismiss for lack of jurisdiction uncontroverted allegations in the Plaintiff's Complaint must be taken as true." As applied to the instant case, all the facts in Plaintiff's Complaint are uncontraverted allegations as Defendant has not filed an answer denying any of Plaintiff's allegations, and must be taken as true.

The Court then cited *Herman v. Cataphora, Inc.*, 730 F3rd 460, 464 (5th Circuit 2013) that "the party invoking the Courts jurisdiction bears the burden of establishing that the Defendant has the requisite minimum contacts with the forum state to justify the Courts' jurisdiction.  Where, as here the Court relies on a Motion to Dismiss for lack of personal jurisdiction without holding an evidentry hearing, that burden requires that only the non-movant make a prima fascia showing" id.

In the instant case, there is no evidentiary hearing and the Plaintiff has met his prima fascia burden because the Defendant has the requisite minimum contacts with Pennsylvania to justify the Courts jurisdiction.

Plaintiff is a resident of Pennsylvania.  Assuming Plaintiff consented to the TOS and HG as Defendant alleged, it was sent to Plaintiff by the Defendant in Pennsylvania where Plaintiff accepted it in Pennsylvania. (If Defendant can prove that Plaintiff did accept it)  Defendant had continuous contacts with Plaintiff over a one year period before June 13, 2020.  Defendant included Plaintiff's Pennsylvania property in its listings of host properties.  The site of the performance of the activity described in those documents was in Pennsylvania in Plaintiff's property where the guest was placed.  The reservation for the guest was sent to Plaintiff in Pennsylvania. Payment was sent to Plaintiff's bank account in Pennsylvania.

The Court in Danziger cited *Central Freight Lines, Inc. v. APA Transportation Corp.* 322 F3rd 376, 379, 384 (5th circuit CIR. 2003) "this case involved not only the contractual interference claim… but also a breach of contract claim, both brought by a Texas based freight carrier against a New Jersey based carrier in a Texas Court…On appeal, (the Court) explained that because 'all of the formal negotiations took place via telephone and written correspondence between the two parties from their respective headquarters, the New Jersey carrier could not really dispute the fact that during the course of  the negotiations (it) specifically and deliberately reached out to a Texas Corporation by telephone and mail with a deliberate  aim of entering into a long standing contractual relationship with a Texas Corporation. (@ 382)'.  Moreover, the New Jersey carrier knew that it was affiliating itself with an enterprise based primarily in Texas and presumably knew that many of the (Texas carriers) customers would come from that state. Because the New Jersey carrier thus purposefully directed its in state and out of state activities as a resident of the forum with the aim of establishing a long term association with that resident and with the foreseeable and intended result of causing economic activities within the forum state, we held that the carrier should have reasonably anticipated being hauled into Court in Texas in

breach of contract claims related to the contract notwithstanding (its) relative brief physical presence in the state" (@383).

As applied to the instant case, Defendant purposefully decided to have out of state activities with Pennsylvania residents, intended to establish long term associations with the Pennsylvania residents, to have economic activity with the residents in Pennsylvania. Airbnb should have reasonably anticipated being hauled into Court in Pennsylvania on a breach of implied contract despite its of lack of physical presence in the state. [2]

In addition, payment was made to Plaintiff by sending payment to Plaintiff in Pennsylvania. Defendant therefore conducted activities and had been sending guests to Plaintiff in Pennsylvania. In addition, the harm in the instant situation was suffered in Pennsylvania.

These contacts by Airbnb were not random, fortuitous or attenuated contacts or a unilateral activity of Defendant.

When determining whether a Court has personal jurisdiction over a breach of contract claim, the Court in Danziger also cited *Trois v. Apple Tree Auction Center CTR, Inc.*, 882 F3rd 485, 489 (5th Circuit 2018) "only those acts which relate to the formation of the contract and the subsequent breach are relevant… including prior negotiations and contemplated future consequences along with the terms of the contract and the party's actual course of dealing. In the instant case, Plaintiff meets all of these criteria, particularly that Plaintiff and Defendant formed a contract in Pennsylvania, Plaintiff alleged the breach occurred in Pennsylvania, and Plaintiff performed his obligations in Pennsylvania (by providing the host property). Pennsylvania has personal jurisdiction.

---

[2] In the declaration of Darion Sheppard attached to Defendant's Motion, Mr. Sheppard acknowledged that Mr. Foresta created an account with Airbnb on July 3, 2019 and did business with Airbnb after that. (p. 6)

According to Defendant in its Motion, only California has personal jurisdiction over Airbnb. However, Airbnb should not be allowed to hide behind their use of the internet only to challenge personal jurisdiction in the other states in which they offer services.

Despite that Defendant is incorporated in the state of Delaware and has its office in the state of California, Airbnb is selling a service over the internet. Airbnb makes money from people using his internet services. Airbnb made money from Plaintiff using its internet service and offering his property for use of Airbnb's client for a rental fee paid to Airbnb by the guest, and a percentage of that fee being earned and kept by Airbnb for its services before the balance of the fee is eventually sent to Plaintiff.

Pennsylvania does have personal jurisdiction over Airbnb in its transactions with the Plaintiff.

C.   <u>Defendant's Motion to Compel Arbitration based on its cited agreements with Plaintiff should be denied</u>.

Defendant's Motion to compel arbitration based on its cited agreements with Plaintiff should be denied for the reason as set forth below:

1.   Defendant has not shown that it has complied with the actions it must take as a prerequisite to compelling Plaintiff to submit its claim to binding arbitration.

In section X2 of the HG it provides that:

> "Airbnb is committed to participating in a consumer friendly dispute resolution process. To that end these host guarantee terms provide <u>for a two-part process</u> for individuals to section X.1 applies (1) <u>an informal negotiation directly with Airbnb's customer service team,</u> and (2) a binding arbitration administered by the American Arbitration Association (AAA) using its specially designed consumer arbitration rules…" ( emphasis supplied)

Nowhere in Defendant's Motion or in the argument does Defendant allege that there ever was provided to the Plaintiff the first part of the dispute resolution, an informal negotiation directly with its Airbnb's customer service team. (See Plaintiff's Affidavit attached hereto as Exhibit "D")

Therefore, Defendant cannot seek this Court at this time to compel Plaintiff to submit to binding arbitration.

2.  Defendant's Agreements, both the TOS and HG violate the Pennsylvania Unfair Trade Consumer Protection Law, 73 P.S. §201-1-201-9.2 and the Plain Language Act, 73 PS §2205.[3]

In section 201-2 of the UTP in subsection (4)(iii) it defines "unfair or deceptive acts or practices as "causing likelihood of confusion or misunderstanding as to affiliation, connection, or association with or certification by another "…"  A 43 page Agreement (TOS) and a 23 page Agreement (HG) totaling 66 pages sent to Plaintiff over the internet as a future member host to read, understand and "click to acknowledge" at the end as a condition of being accepted as a member host is an unfair and deceptive act causing a likelihood of confusion and misunderstanding as to its future affiliation with a certification as a host of Airbnb.

As a practical matter it is unreasonable to expect a perspective member host to read, comprehend and remember all of the 66 pages of terms and conditions stated for the most part in legalese before he clicks "accept" and it violates the Pennsylvania Unfair Trade Practices and Consumer Protection Act as it likely causes confusion or misunderstanding as to the conditions of the affiliation with Airbnb.  The terms are also not stated in plain language for everyone to understand.

---

[3] This is not alleged in Plaintiff's original Complaint as the agreement was raised by Defendant in its 12(B)(2) Motion and would be included in an Amended Complaint. (also, see Plaintiff's Affidavit Exhibit (D)).

12

A prospective member host can be anyone over the age of 21 who owns a property which they want to offer for short term or long term rental through the Airbnb system. There is no vetting process by Airbnb to test the potential members 'hosts' intellect, or to require a resume of the persons level of academic achievement. Even someone with a college degree would have difficulty in reading and understanding 66 pages just to get to click "accept". In fact, such a lengthy set of Agreements are probably intentionally designed that way, so as not to be able to be thoroughly read and understood before clicking "accept". It is particularly confusing and its terms easily misunderstood particularly if it being seen by the prospective member host over a small mobile device such as a telephone. It must also be noted that neither Agreement contains a provision that the prospective member host acknowledges that he/she has read the terms and conditions, and understands the terms and conditions before acknowledging his/her agreement to accept and abide by the terms and conditions contained in all 66 pages.

3. In addition to a violation of the Pennsylvania Unfair Trade Practices Act, the Pennsylvania Plain Language Act, 73 Ps §2205 (a) provides that "all commercial contracts… shall be written, organized and designed so they are easy to read and <u>understand</u>" (emphasis supplied), also applies to Plaintiff's challenge to the validity of the provision of the TOS and HG which relate to an agreement to arbitrate and to submit any claim or dispute to the American Arbitration Association.

Query? Does an average prospective host understand what it means to submit a claim to the American Arbitration Association or even know what is the American Arbitration Association? The suggested answer is "No" (nor did Plaintiff, see Plaintiff's Affidavit). Specifically, these provisions in the agreements do not describe what the American Arbitration Association is, do not include any of the requirements for submitting a dispute to the American

13

Arbitration Association for resolution, most importantly that it is a private company and the cost. The fees and costs for submitting a case to the AAA are neither free nor comparable to the cost for filing a Civil Action in Court, specifically that the Arbitrators get paid, either by the Claimant or equally between the parties or totally by the respondent, as opposed to a Judge in a Civil Action who is not paid by the parties. The cost is in the thousands of dollars. This is not set forth in the agreement. Airbnb has no way of knowing if the host understands this. If the costs were set forth in the agreement, this could discourage prospective hosts from agreeing to the Arbitration terms of the agreement.

This is exactly the kind of provision in a commercial contract that is protected by the Pennsylvania Unfair Trade Practices Act and the Plain Language Act. The provisions in the agreements that require Plaintiff to submit his/her claim to the American Arbitration Association are invalid and not binding on the Plaintiff.

D     Discovery

Plaintiff served the Defendant with a request for production of records and documents (see Exhibit B) attached. Defendant only provided Plaintiff with "host damage protection terms" (see Exhibit C)[4]

In No 1, entitled "the host damage protection" it states:

> "Airbnb agrees to pay you, as a host, whenever the responsible guest fails to do so, to repair or replace your covered property (as defined below) damaged or destroyed as a result of a covered loss (as defined below) subject to the exclusions, limitations and other terms and conditions of the host damage protection terms."[5]

This particular Host Protection Term document.

---

[4] A copy of this was not attached to Defendant's Motion.
[5] Although Plaintiff alleged in his Complaint that Airbnb agreed to pay for any damages to the property by the guest, Plaintiff does not recall if it was this version of the "Host Damage Protection Term" sent to him.

Before Discovery is completed, it is premature for Defendant to allege a lack of contact in Pennsylvania. When Defendant responds to the additional requests for production, Defendant should be producing proof of the scope of Defendant contacts in Pennsylvania.

IV      CONCLUSION

For all the reasons stated herein Defendant's 12(b) (a) Motion should be denied.

Respectfully submitted,

Date:  May 31, 2023

*Joyce Ullman*
Joyce Ullman, Esquire
Attorney for Plaintiff, Joseph Foresta