IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JOSEPH FORESTA** | : | **CIVIL ACTION** |
| | : | |
| v. | : | NO.   23-1379 |
| | : | |
| **AIRBNB, INC.** | : | |

## MEMORANDUM

**MURPHY, J.**                                                                                                                              **January 29, 2024**

      Joseph Foresta listed his apartment for rent on Airbnb.com, a popular online marketplace that makes money by brokering short-term housing rentals.  A guest booked Mr. Foresta's apartment through Airbnb, but to Mr. Foresta's dismay, the guest then barricaded himself inside the building, changed the locks, and took full control of the apartment for months.  Mr. Foresta now wants Airbnb to pay for the damage to his property and lost rental income.

      Airbnb's first line of defense is to try to get the case dismissed for lack of personal jurisdiction because its connections to Pennsylvania are limited to its website.  As a backup, it seeks to compel arbitration.  For the reasons that follow, we hold that personal jurisdiction is proper over Airbnb because it purposefully availed itself of doing business in Pennsylvania by knowingly entering into contracts with Pennsylvania homeowners through its website and extracting fees for its services.  But we find that the arbitration agreement in the Terms of Service is not invalid, and the questions raised by Mr. Foresta concerning enforceability have been delegated to the arbitrator.  We will therefore order the case into arbitration.

1

I.      Background[1]

Mr. Foresta is a Pennsylvania resident who owns a three-story, multi-unit residential property in center city Philadelphia. DI 1 at 11.[2] Airbnb, Inc. is a Delaware corporation headquartered in California. *Id*; DI 7 at 2. Airbnb, Inc. is not registered to do business in Pennsylvania. DI 19-1 ¶ 2; DI 18 at 1.

   a. How Airbnb works

Airbnb operates an online marketplace for short term rentals through its website. DI 7-1 ¶¶ 2-3. Users, who Airbnb calls "guests," can sign up for accounts and browse properties available for rent from other users called "hosts." *Id*. Guests use Airbnb to find attractive properties, and then book reservations with hosts through the website. *Id*. Payments are processed through the website, and Airbnb extracts a brokerage fee, which Airbnb estimates is typically around 14-16% of a host's payout. DI 1 at 11; Airbnb service fees, Airbnb.com, https://www.airbnb.com/help/article/1857 (last visited Jan. 28, 2024) (hyperlinked within the Airbnb Terms of Service at DI 7-7 at 8).

---

[1] We draw these factual allegations from Mr. Foresta's complaint, the exhibits and affidavits attached to Mr. Foresta's response, and certain documents attached to Airbnb's motion to dismiss. Once jurisdiction is challenged, plaintiff bears the burden of establishing personal jurisdiction through "affidavits or other competent evidence." *Metcalfe v. Renaissance Marine, Inc.*, 566 F.3d 324, 330 (3d Cir. 2009) (quoting *Dayhoff Inc. v. H.J. Heinz Co.*, 86 F.3d 1287, 1302 (3d Cir. 1996). However, plaintiff is entitled to "have [his] allegations taken as true and all factual disputes drawn in [his] favor." *O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d 312, 316 (3d Cir. 2007) (citing *Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 97 (3d Cir. 2004)). Additionally, courts may consider an "undisputedly authentic document" attached as an exhibit to a motion to dismiss. *Pension Benefit Guar. Corp., v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993). In all respects material to this opinion, the parties are working from an agreed decisional record, and we will do the same.

[2] Unless otherwise indicated, page numbers reflect the pagination of the CM/ECF docketing system.

Mr. Foresta created his Airbnb account on July 3, 2019. DI 7-1 ¶ 12; DI 13-1 at 37. The account creation process required Mr. Foresta to enter basic information and click a large "Sign up" button. DI 7-5; DI 7-1 ¶ 8. At the time, upon clicking "Sign up," users like Mr. Foresta were brought to a separate page titled "Before you join." DI 7-6. This page presented new users with hyperlinks to Airbnb's Terms of Service and prompted them to click "accept" or "decline." DI 7-6; DI 7-1 at ¶ 15.

### b. What happened to Mr. Foresta's apartment

A guest contacted Mr. Foresta through Airbnb's website and made a one-night reservation in the second-floor apartment of the building Mr. Foresta owned. DI 1 at 12. On at least eight previous occasions, Mr. Foresta had used Airbnb to find guests to stay in properties he owned and received payment through Airbnb. DI 13-1 at 38. The guest paid for the stay through Airbnb, and Airbnb collected its fees. DI 1 at 11. Following his one-night stay, the guest refused to vacate the apartment and changed the locks to the outside door of the building so Mr. Foresta could not get in. *Id* at 12-13. When Mr. Foresta attempted to regain access to the property by himself, the guest — an unsustainable appellation at this point — assaulted Mr. Foresta with a baseball bat causing serious injury and threatened to kill him if he came back. *Id*. at 13. Upon regaining control of the property many months later, Mr. Foresta discovered damage he values at over $75,000. DI 1 at 14. Mr. Foresta alleges that he made many attempts to contact Airbnb for help in dealing with the squatter, including letters written by retained legal counsel, but Airbnb ignored him. *Id*. at 13-14.

### c. The relevant contractual language

The Airbnb Terms of Service, the Airbnb Host Guarantee, and the Airbnb Payments Terms of Service each contain nearly identical language concerning arbitration. DI 7-7 at 19-20;

DI 7-8 at 10-11; DI 19-2 at 50-51.  The Airbnb Terms of Service agreement states in relevant part:

> You and Airbnb mutually agree that any dispute, claim or controversy arising out of or relating to these Terms or the applicability, breach, termination, validity, enforcement or interpretation thereof, or to the use of the Airbnb Platform, the Host Services, the Group Payment Service, or the Collective Content (collectively, "Disputes") will be settled by binding individual arbitration (the "Arbitration Agreement").  If there is a dispute about whether this Arbitration Agreement can be enforced or applies to our Dispute, you and Airbnb agree that the arbitrator will decide that issue.

DI 7-7 at 20.  The Terms of Service also contain a "Pre-Arbitration Dispute Resolution and Notification" clause that states: "Prior to initiating an arbitration, you and Airbnb each agree to notify the other party of the dispute and attempt to negotiate an informal resolution to it first." *Id.*  There is also an "Overview of Dispute Resolution Process" clause which states that "these Terms provide for a two-part process for individuals to whom [the arbitration agreement] applies: (1) an informal negotiation directly with Airbnb's customer service team, and (2) a binding arbitration administered by the American Arbitration Association . . . ." *Id.*

### d. Airbnb's motion to dismiss

Airbnb filed a combined motion to dismiss for lack of personal jurisdiction and motion to compel arbitration.  DI 7.  Airbnb argues that specific personal jurisdiction in Pennsylvania is improper because it maintains no physical presence in Pennsylvania and merely operates an internet "platform" upon which private parties contract with one another; therefore, any contacts it has with Pennsylvania are incidental.  DI 7 at 14-15.  Additionally, Airbnb argues that the arbitration clause in the Terms of Service requires this case to proceed by arbitration.  DI 7 at 12.

In response, Mr. Foresta argues that personal jurisdiction is appropriate because Airbnb conducted business with him over the internet concerning his Pennsylvania property, including by remitting fees from the guest who caused the damage to his bank account in Pennsylvania.  DI

4

13 at 9-10. Mr. Foresta additionally argues that this case should not be sent to arbitration because Airbnb failed to abide by its own prerequisites to arbitration, and the Terms of Service violate state law. DI 13 at 11-13.

II. **Analysis**

A court should dismiss a complaint when it lacks personal jurisdiction over the defendant. Fed. R. Civ. P. 12(b)(2). "Once challenged, the plaintiff bears the burden of establishing personal jurisdiction." *O'Connor v. Sandy Lane Hotel Co., Ltd.*, 496 F.3d 312, 316 (3d Cir. 2007). This may be established through "affidavits or other competent evidence." *Metcalfe v. Renaissance Marine, Inc.*, 566 F.3d 324, 330 (3d Cir. 2009) (quoting *Dayhoff Inc. v. H.J. Heinz Co.*, 86 F.3d 1287, 1302 (3d Cir. 1996). If the court does not hold an evidentiary hearing, then the plaintiff "need only establish a prima facie case of personal jurisdiction." *Id.* (quoting *O'Connor*, 496 F.3d at 316). The plaintiff is "entitled to have [his] allegations taken as true and all factual disputes drawn in [his] favor." *O'Connor*, 496 F.3d at 316 (quoting *Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 97 (3d Cir. 2004)).

a. **Personal jurisdiction exists over Airbnb because of its business relationship with Pennsylvania homeowners and the maintenance of its website.**

We will start by outlining the relevant legal standards. A district court sitting in diversity applies the personal jurisdiction law of the forum state. *Vetrotex Certainteed Corp. v. Consol. Fiber Glass Prods. Co.*, 75 F.3d 147, 150 (3d Cir. 1996) (citing Fed. R. Civ. P. 4(e)). Pennsylvania's long arm statute is coextensive with the limits of the U.S. Constitution. *Id*. (citing 42 Pa. Stat. and Cons. Stat. § 5322(b)). We will "therefore look to federal constitutional doctrine" in determining whether personal jurisdiction over Airbnb is appropriate. *Id.*.

Personal jurisdiction can be general or specific, but here we will focus on the specific variety.[3] *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1024 (2021). Specific personal jurisdiction has two prongs. First, the plaintiff must show purposeful availment, which in this context means "minimum contacts with the forum state that show the defendant took a deliberate act reaching out to do business in that state." *Hepp v. Facebook*, 14 F.4th 204, 207 (3d Cir. 2021). "The contacts must be the defendant's own choice, and not 'random, isolated, or fortuitous,'" and must show that the defendant "'reached out beyond' its home –by for example, 'exploiting a market' in the forum State or entering a contractual relationship centered there." *Ford Motor Co.*, 141 S. Ct. at 1025 (first quoting *Keeton v. Hustler Mag., Inc.*, 465 U.S. 770, 774 (1984); then quoting *Walden v. Fiore*, 571 U.S. 277, 285 (2014)). The determination of minimum contacts "should be made on a case-by-case basis by assessing the 'nature and quality' of the contacts.'" *Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 453 (3d Cir. 2003) (quoting *Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119, 1127 (W.D. Pa. 1997).

The second prong of specific personal jurisdiction requires the minimum contacts to "give rise to — or relate to — plaintiff's claims," which requires a "strong relationship among the defendant, the forum, and the litigation." *Hepp*, 4 F.4th at 207-08 (quoting *Ford Motor Co.*, 141 S.Ct. at 1028). Relatedness can be satisfied so long as there is a "meaningful link . . .

---

[3] Mr. Foresta does not seriously contend that there is general personal jurisdiction over Airbnb. And everyone agrees that Airbnb Inc., the only defendant in this case, is not registered to do business in Pennsylvania. *See* DI 18; DI 19. Therefore, *Mallory v. Norfolk Southern Railway Co.*, 600 U.S. 122 (2023), need not be considered.
But Mr. Foresta does argue that Airbnb has waived any objection to personal jurisdiction by removing the case to federal court, instead of challenging personal jurisdiction in the Pennsylvania Court of Common Pleas. DI 13 at 5-6. This argument fails because "[a] party who removes an action from a state to a federal court does not thereby waive any of his . . . Federal Rule 12(b) defenses or objections." *Danzinger & De Llano, LLP v. Morgan Verkamp LLC*, 948 F.3d 124, 132 (3d Cir. 2020) (quo ting 5C Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1395 (3d ed. 2019)).

between a legal obligation that arose in the forum and the substance of the plaintiffs' claims." *O'Connor*, 496 F.3d at 324.  It requires "neither proximate causation nor substantive relevance." *Id.*

On the first prong, to determine whether the operators of a website have purposefully availed themselves of a forum state, courts within the Third Circuit usually apply the framework first articulated in *Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119 (W.D. Pa. 1997). *Zippo* is "a seminal authority regarding personal jurisdiction" of internet businesses, *Toys "R" Us, Inc.*, 318 F.3d at 453, and imagines a scale where, "[a]t one end . . . are situations where a defendant clearly does business over the internet . . . enter[ing] into contracts with residents of a foreign jurisdiction that involve the knowing and repeated transmission of computer files over the internet . . . [and a]t the opposite end are situations where a defendant has simply posted information on a [website] which is accessible to users in foreign jurisdiction."  *Zippo Mfg. Co.*, 952 F. Supp at 1124.  In the middle are "interactive [websites] where a user can exchange information with the host," in those cases, the "level of interactivity and commercial nature of the exchange of information that occurs on the" website determines whether personal jurisdiction is proper.  *Id.*

"In deciding whether to exercise jurisdiction over a cause of action arising from a defendant's operation of a web site, a court may consider the defendant's related non-Internet activities as party of the 'purposeful availment' calculus." *Toys "R" Us, Inc.,* 318 F.3d at 453. "[T]he mere operation of a commercially interactive web site should not subject the operator to jurisdiction anywhere . . . .  Rather, there must be evidence that the defendant 'purposefully availed' itself of conducting activity in the forum state, by directly targeting its web site to the

7

state, knowingly interacting with residents of the forum state via its web site, or through sufficient other related contacts." *Id*. at 454.

Starting with the first prong, we conclude that Airbnb purposefully availed itself of doing business in Pennsylvania. In *Zippo*, personal jurisdiction was proper because the defendant had entered into contracts with multiple users in Pennsylvania and sold thousands of "passwords" akin to premium memberships to Pennsylvania residents. 952 F. Supp. at 1126. And "[i]f a defendant web site operator intentionally targets the site to the forum state, and/or knowingly conducts business with forum state residents via the site, then the 'purposeful availment' requirement is satisfied." *Toys "R" Us, Inc.*, 318 F.3d at 452.

Here, there is purposeful availment because Airbnb does business through an interactive website that allows Pennsylvanians to search for, book, and list properties for rent. These features, along with the remittance of money between guests and hosts, minus fees, places Airbnb's platform far beyond "passive" websites that are purely informational and do not provide for specific personal jurisdiction. *See Zippo Mfg. Co.*, 952 F. Supp. at 1124. Unlike many other websites where individuals can sell personal property, Airbnb's business is focused on the leasing of real property, which is necessarily and inextricably tied to the land, and therefore, the Commonwealth where that land is found. Airbnb is aware of the location of every property listed on its site and chooses to let properties in Pennsylvania be listed on its site, charging fees when reservations are made. And Airbnb places itself in the middle of the transactions between users through its own payment processor, significantly increasing the user interactivity and extent of business ties with Pennsylvania. DI 1 at 11.

Applying *Zippo*, another court found purposeful availment based upon a defendant's operation of a website that allowed users to select dates, browse available cabins for rent, and

provide payment — even where those cabins were located physically outside of Pennsylvania. *O'Keefe v. Rustic Ravines, LLC*, 2023 WL 2602071, at *4 (W.D. Pa. Mar. 22, 2023). Jurisdiction was also proper over the foreign owners of a bitcoin exchange who transacted with Pennsylvania residents because their interactive website allowed users to "open and manage accounts [and] . . . make purchases and trades" with cash directly on the website. *Pearce v. Karpeles*, 2019 WL 3409495, at *5 (E.D. Pa. July 26, 2019). Much like these other websites, Airbnb allows users to sign up for an account, create new listings, and submit payments through its website. DI 7-1 at ¶¶ 2-3; DI 1 at 11. Under the *Zippo* line of cases, Airbnb's maintenance of its website, through which it conducts business with Pennsylvanians, therefore "constitutes the purposeful availment of doing business in Pennsylvania." *Id*. at 1125-26.

The level of interactivity and business purpose of its website is why Airbnb's reliance upon *Ackourey v. Sonellas Custom Tailors*, 573 F. App'x 208 (3d Cir. 2014), is misplaced. *Ackourey* was a copyright case in which the Third Circuit held, applying *Zippo Mfg. Co.*, that jurisdiction was improper because the website "d[id] not allow customers to place orders, make payments, or engage in any business transaction." *Id*. at 210. Additionally, the "level of interactivity and commercial nature of [the] website was minimal" and the plaintiff had "failed to provide any evidence that Pennsylvania residents used [the] website to schedule appointments." *Id*. at 212. In contrast, Airbnb's website is interactive and has been used by Pennsylvania users, including Mr. Foresta himself.[4] DI-1 at 11-12; DI 13-1 at 37-38.

---

[4] Note also that in *Hepp*, the Third Circuit did not quarrel with the premise that internet platforms like Imgur and Reddit had purposefully availed themselves of Pennsylvania, choosing instead to focus the analysis on whether the contacts "relate[d] to" the plaintiff's misappropriation of likeness claim. *Hepp*, 14 F.4th at 208.

Nor can Airbnb reasonably maintain that its contacts with Pennsylvania homeowners like Mr. Foresta are merely "fortuitous" because unlike goods that flow through streams of commerce, houses do not move across state lines. The location of a property listed for rent cannot change at any point throughout Airbnb's business relationship with a homeowner like Mr. Foresta, so it can hardly come as a shock when Airbnb is haled into court in the state where the property is located. Rather, "[w]hen a defendant makes a conscious choice to conduct business with the residents of a forum state, 'it has clear notice that it is subject to suit there.'" *Zippo Mfg. Co.*, 952 F. Supp. at 1126 (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)). Like the defendant in *Zippo Mfg. Co.*, Airbnb "was under no obligation to sell its service to Pennsylvania residents," and thus, by purposefully and repeatedly engaging in those transactions, it has purposefully availed itself of doing business in Pennsylvania. *Id.*[5]

Because Airbnb intentionally contracts with Pennsylvania homeowners and extracts fees for its services, it routinely "exercises the privilege of conducting activities" in Pennsylvania and therefore has sufficient minimum contacts with Pennsylvania to justify the exercise of personal jurisdiction. *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 319 (1945).

---

[5] In support of its motion, Airbnb directs our attention to various authorities from outside the Third Circuit. For example, there's *Schwartz v. Poblete*, 2021 Cal. Super. LEXIS 5573, at *25 (Cal. Super. Ct. Feb. 22, 2021), in which a California court failed to find purposeful availment over a similar business because the defendant's "mere maintenance of [a] website advertising . . . third-party property rentals" did not establish personal jurisdiction. Mr. Foresta, however, has alleged that Airbnb remitted fees from the offending guest, taking a portion for itself. DI-1 at 11; DI 13-1 at 37-38. Similar logic applies to *Conrad v. Benson*, 2020 WL 4754332, at *4 (D.S.C. Aug. 14, 2020) in which the District of South Carolina declined to assert jurisdiction over the operator of a rental website because the website was found to be only "semi-interactive" that did not amount to an intent to engage "in business or other interactions within that state in particular." (quoting *Carefirst of Maryland, Inc. v. Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390, 401 (4th Cir. 2003)). *Conrad* also involved a guest's lawsuit, not a homeowner's. *Id.* at *1-2. In the present case, Airbnb's website is interactive under *Zippo*, and Airbnb's business relationship with Pennsylvania homeowners like Mr. Foresta is not fortuitous, but rather, the goal of a deliberate business strategy.

Having determined that Airbnb personally availed itself of doing business in Pennsylvania, we turn to the simpler question of whether Mr. Foresta's claims arise from or relate to Airbnb's contacts with Pennsylvania. Mr. Foresta's claims are premised on Airbnb's alleged violation of express or implied contracts between them by not helping him remove the squatter and not indemnifying him afterward. DI 1 at 14-15. These claims clearly arise from or relate to the alleged contracts between Airbnb and Mr. Foresta — especially the Host Guarantee, which contemplates indemnity explicitly. DI 7-8.

Airbnb argues that Mr. Foresta's claims do not arise from the contacts between them because it did not control the guest who allegedly caused the damage. DI 7 at 17-18. This argument takes too narrow of an approach to the question. This lawsuit puts at issue Airbnb's duties — which, to the extent they exist, clearly arise out of the contacts Airbnb had with Mr. Foresta.

Because we have determined that Airbnb's maintenance of its website and business relationships with Pennsylvania homeowners like him amount to purposeful availment, and that Mr. Foresta's suit relates these contacts, we conclude that the court has specific personal jurisdiction over Airbnb.

  b. **The arbitration provisions are valid, and any remaining questions or objections have been delegated to the arbitrator**

Having determined that our assertion of specific personal jurisdiction over Airbnb is proper, we next consider whether to grant the motion to compel arbitration against Mr. Foresta. For the reasons that follow, we will grant that motion.

The Federal Arbitration Act provides that "an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the

11

revocation of any contract . . . ." 9 U.S.C. § 2. The FAA "embodies the 'national policy favoring arbitration and places arbitration agreements on equal footing with all other contracts.'" *Bacon v. Avis Budget Grp., Inc.*, 959 F.3d 590, 599 (3d Cir. 2020) (quoting *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 443 (2006)). Where parties have agreed to arbitrate, "[t]he FAA requires courts to stay litigation and compel arbitration of claims covered by a written, enforceable arbitration agreement." *Id.* (citing 9 U.S.C. §§ 3, 4).

"[D]oubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Brayman Const. Corp. v. Home Ins. Co.*, 319 F.3d 622, 625 (3d Cir. 2003) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983)). This "presumption [in favor of arbitrability] is particularly applicable where the [arbitration] clause is . . . broad." *Id.* at 625 (quoting *AT&T Techns, Inc. v. Commc'ns Workers of America*, 475 U.S. 643, 650 (1986)). The presumption applies to the interpretation of the "scope of an arbitration agreement, and not when deciding whether a valid agreement exists." *Flintkote Co. v. Aviva PLC*, 769 F.3d 215, 220 n.3 (3d Cir. 2014).

"When a federal court addresses a motion to compel arbitration, it is 'limited to a narrow scope of inquiry.'" *In re Pharmacy Benefit Managers Antitrust Litig.*, 700 F.3d 109, 116 (3d Cir. 2012) (quoting *Gay v. CreditInform*, 511 F.3d 369, 386 (3d Cir. 2007)). Specifically, before compelling arbitration, a court must consider two "gateway" questions: first, "whether the parties have a valid arbitration agreement," and second, "whether the dispute is covered by the arbitration clause." *Bacon*, 959 F.3d at 599 (quoting *Lamps Plus, Inc. v. Varela*, 139 S.Ct. 1407, 1416-17 (2019)). "We must answer 'the question of whether the parties agreed to arbitrate' . . . . And when deciding whether to compel arbitration, we must consider the enforceability and the scope of the contract's arbitration provision." *Darrington v. Milton Hershey Sch.*, 958 F.3d 188,

191 (3d Cir. 2020) (citations removed).  Even these gateway questions can be delegated to the arbitrator, with the exception that a court must be satisfied "that an arbitration agreement exists" before ordering arbitration.  *MZM Constr. Co. v. New Jersey Bldg. Laborers Statewide Benefit Funds*, 974 F.3d 386, 401 (3d Cir. 2020).

### i.  A valid arbitration clause exists in the Terms of Service.

The Terms of Service include an arbitration provision providing that "individuals" within the United States "agree that any dispute, claim or controversy arising out of or relating to [the Terms of Service] . . . or to the use of the Airbnb Platform . . . will be settled by binding individual arbitration."  DI 7-1 at 19-20.  Mr. Foresta does not directly challenge his assent to the Terms of Service, nor the authenticity of the version of the Terms of Service that Airbnb has provided.  DI 13 at 11-14.   Instead, he relies on two Pennsylvania statutes to argue we should not compel arbitration: the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 Pa. Stat. and Cons. Stat. § 201-1, et seq. and the Pennsylvania Plain Language Consumer Contract Act, 73 Pa. Stat. and Cons. Stat. § 2205.  However, Mr. Foresta cites to no cases applying those statutes to overcome a motion to compel arbitration.  Additionally, to the extent these arguments challenge the length and complexity of the contract, they are misplaced.  Arguments challenging "the contract as a whole" as opposed to the validity of the arbitration clause specifically are proper for the arbitrator because arbitration provisions are severable from the rest of the contract.  *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 70 -71 (2010); *Buckeye Check Cashing Inc. v. Cardegna*, 546 U.S. 440, 445-46 (2006).  Therefore, Mr. Foresta has not persuaded us that there was no contract to arbitrate between Airbnb and him.

### ii.  The arbitration clause properly delegates questions of arbitrability

Normally, it is for the courts to decide whether the claims fall within the scope of the arbitration agreement, however, "the parties may contract around it, and agree to have . . . these

questions decided by an arbitrator." *Singh v. Uber Techns Inc.*, 939 F.3d 210, 215 (3d Cir. 2019). To go so far, the arbitration agreement must include a "delegation clause" that "reserves arbitrability questions for an arbitrator to decide." *Id*. The caveat is that "[c]ourts should not assume that the parties agreed to arbitrate arbitrability unless there is 'clea[r] and unmistakabl[e]' evidence that they did so." *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995) (quoting *AT&T Techns, Inc.,* 475 U.S. at 649).

In the Terms of Service, the "clear and unmistakable evidence" of an intent to delegate arbitrability questions to the arbitrator is the following clause: "[i]f there is a dispute about whether this Arbitration Agreement can be enforced or applies to our Dispute, you and Airbnb agree that the arbitrator will decide that issue." DI 7-7 at 20. "Just as a court may not decide a merits question that the parties have delegated to an arbitrator, a court may not decide an arbitrability question that the parties have delegated to an arbitrator." *Henry Schein, Inc. v. Archer and White Sales, Inc.*, 139 S.Ct. 524, 530 (2019). And other courts have previously upheld this same delegation clause. See *Dunbar v. Airbnb, Inc.*, 2020 WL 1550236, at 2-3 (D. Haw. Apr. 1, 2020); *Farmer v. Airbnb, Inc.*, 2021 WL 4942675, at *1 (N.D. Cal. June 1, 2021); *Morris v. Airbnb, Inc.*, 2020 WL5823542, at *3 n.2 (W.D. Okla. Sept. 30, 2020).

Delegation clauses can be challenged, but that requires challenging the delegation clause specifically because "a delegation clause is severable from the underlying arbitration agreement such that it is separately entitled to FAA-treatment." *Singh,* 939 F.3d at 215. "Application of the severability rule does not depend on the substance of the remainder of the contract." *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 71-72 (2010). Mr. Foresta did not challenge the delegation clause here. And the delegation clause requires us to allow the arbitrator to determine whether his claims fall within the scope of the arbitration agreement.

14

### iii. Mr. Foresta's defenses also fall within the delegation clause

Apart from attempting to defeat Airbnb's motion to compel arbitration based on the Pennsylvania Unfair Trade Practices and Consumer Protection Law and the Plain Language Consumer Contract Act, Mr. Foresta says that Airbnb did not follow the procedural prerequisites outlined in the Terms of Service. DI 13 at 11-12. The delegation clause places these defenses within the purview of the arbitrator.

The delegation clause here applies to any questions regarding whether the arbitration agreement "can be enforced" or "applies to our Dispute," which includes whether Airbnb complied with any prerequisites.[6] Additionally, the "'procedural questions which grow out of the dispute and bear on its final disposition' are presumptively not for the judge, but for an arbitrator, to decide." *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 85 (2002) (quoting *John Wiley & Sons, Inc. v. Livingston*, 376 U.S. 543, 557 (1964)).

In sum, all of Mr. Foresta's arguments are for the arbitrator.

## III.   Conclusion

For the reasons outlined above we hold that the Court does have personal jurisdiction over defendant, Airbnb, Inc., but this case must proceed before an arbitrator. Hence, Airbnb's motion to dismiss for lack of personal jurisdiction is denied and its motion to compel arbitration and stay proceedings is granted.

---

[6] The delegation clause may be an additional reason Mr. Foresta's Pennsylvania statutory defenses fail.